(No. 3722—

LESTER E. PEARMAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 9, 1943.*

DONALD A. MILLER, for claimant.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

FISHER, J.

This claim was filed June 3, 1942, and the record completed September 30, 1943.

The claim is for benefits under the Illinois Workmen's Compensation Act for total permanent disability as a result of injuries sustained by claimant during the course of his employment as an auto control operator while employed by the Department of Public Works and Buildings, Division of Highways, State of Illinois.

Claimant alleges that on October 20, 1941, while engaged in his employment and while operating a bulldozer in spreading and leveling of dirt he slipped and fell striking his back against the said tractor and thereby sustained a fracture from which he has become totally and permanently disabled.

Claimant seeks total permanent disability compensation and a pension for life.

The record consists of the complaint, report of the Division of Highways, transcript of testimony on behalf of claimant, statement, brief and argument of claimant, statement, brief and argument for respondent and reply to argument of respondent by counsel for claimant.

It is admitted that respondent had notice of the accident; that the claim was filed in apt time; that claimant and respondent were operating under the Workmen's Compensation Act and that all jurisdictional requirements have been complied with.

Claimant had one child under the age of 16 years at the time of the injury.

Claimant was paid compensation at the rate of $16.15 per week from the time of the injury to May 23, 1942, amounting to $506.79. Medical, hospital and transportation expenses and charges in the sum of $583.38 were paid by respondent.

Claimant now seeks total permanent disability and contends that he has become totally and permanently disabled. There appears to be no evidence to support this contention. Dr. R. J. Rendelman testifying in behalf of respondent (page 17 Transcript of Evidence) testified as follows:

"Q. Would you make a statement as to your opinion of the percentage of disability which will be permanent in this case?

A. Well, that is a pretty hard question, I think. Well, I would answer that this way. It depends all together what Mr. Pearman expects to do in the future. If he expects to continue along the lines he was in when this accident happened, I would say that his disability would be 100%. I don't think he would be able to continue. Of course, if he wants to take up lighter occupation, he would probably get by with lesser degree of disability.

Q. Do you think he would be able to do lighter work?

A. Yes; I think so, clerical work, work that wouldn't cause any physical exertion. When you have a spinal injury, you have a pretty hard proposition to content with. That has been my observation."

Claimant testifying in his own behalf said on cross examination (pages 11 and 12 Transcript of Testimony):

"Q. The State offered you a job did it not?

A. Well, no, what you call a job. Wanted to give me $12.50, $18.00 or $20.00 a week, couldn't live on that. I tell you the way I look at it.

Q. Did you ever refuse to take a job for the State?

A. That one I did. I didn't feel like going to work for $18.00 crippled, when I had made $75.00. I could make more well. The Doctor advised me to go to work, light, right work.

Q. Any light work pay $75.00?

A. I spent 16 years on bulldozers and auto control work.

Q. Did the State at any time tell you they wouldn't give you a better job until your condition was improved?

A. It was only a short job at West Vienna building a road there.

Q. It was light work?
A. It wouldn't last very long.
Q. You don't know what the State would have offered you after that job?
A. I was on the wrong side of the fence. Not anything. I had worked in political job you mention. Knew I was on the wrong side of the fence."

The report of the Division of Highways shows that on May 19, 1942, claimant was transported in an automobile of the Division from his home to Barnes Hospital in St. Louis, Missouri, where he was examined by Dr. J. Robert Key, Professor of Clinical Orthopedic Surgery, Washington University School of Medicine. He was returned to his home the same day. On May 20th Dr. Key reported to the Division in part as follows:

"*X-Rays*—X-Ray examination reveals no evidence of fracture or dislocation. There is some evidence of hypertrophic, large spurs being present between the vertebrae shown in the upper lumbar region, and there is a suggestion of hypertrophic which is around the margins of the vertebrae in the dorsal region.

*Opinion*—This man apparently has had a contusion of his back and I believe that his symptoms follow more those which are usually classified as arthritis rather than being purely traumatic in region. I am not able to connect his headaches with the injury.

For this man I would suggest excess vitamins, a low fat diet, postural exercises, increasing activity and calcium and vitamins by mouth in addition to his low fat diet. I think that he would be much better off and recover more quickly and be able to return to his original occupation sooner if he would begin working and gradually increase his activities."

The proof submitted tends to support claimant's allegation that at the present time he is unable to engage in his usual and customary occupation but it is not clear that such disability as he suffers is a result of the injury which he sustained. The burden is upon claimant to prove that he is disabled and that his disability is a direct result of the alleged injury. This he has not done. Claimant himself admits that he is not totally disabled. There is no evidence in the record of this case upon which we could base an award for total disability.

An award must therefore be and is denied.